ED. SCHUSTER & COMPANY, INC., Appellant, vs. HENRY, State Treasurer, Respondent.

WADHAMS OIL COMPANY, Appellant, vs. SAME, Respondent.

*May 16—June 4, 1935.*

For the appellant Ed. Schuster & Company, Inc., there was a brief by *Kaumheimer & Kaumheimer* of Milwaukee, attorneys, and *Edward J. Dempsey* of Oshkosh, *Bowler, Bowler & Currie* of Sheboygan, and *George H. Lickert, Jr.,* of Milwaukee of counsel, and oral argument by *Mr. Leon Kaumheimer, Mr. Dempsey,* and *Mr. Currie.*

For the appellant Wadhams Oil Company there were briefs by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish, J. H. Marshutz,* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

The *Attorney General, Herbert H. Naujoks,* assistant attorney general, attorneys, and *Cyrus C. Thieme* of Milwaukee special counsel, for the respondent.

A brief was filed by *Nichols, Morrill, Wood, Marx & Ginter* of Cincinnati, Ohio, as *amicus curiæ.*

A brief was also filed by *Olin & Butler* of Madison, as *amicus curiæ.*

FRITZ, J.   For the consideration of the proposition which is decisive on this appeal, it suffices to note at the outset the following facts: Sec. 76.75, Stats. 1933 (which is sec. 1 of ch. 469, Laws of 1933, set forth, so far as here material, in the margin,[1] either verbatim or in substance), creates a

---

[1] "Chapter 469, Laws of 1933.

"An Act to create section 76.75 and subsection (5) of section 20.09 of the statutes, relating to an emergency occupational tax on chain stores, providing penalties, and making an appropriation. . . .

"Section 1.   A new section is added to the statutes and a new subsection is added to section 20.09 of the statutes to read: 76.75

so-called "Occupational Tax on Chain Stores," which requires the operators of two or more stores, mercantile establishments, or places where goods, wares, or merchandise are sold or offered for sale at retail, to pay an annual tax on the gross income derived by such operators from their retail operations in Wisconsin. The rate of the tax varies according to the amount of that gross income, and increases gradually from 6/20ths of 1 per cent upon gross income of $100,000 or less, to 13/20ths of 1 per cent upon all gross income in excess of $5,000,000. In accordance with sec. 76.75,

Occupational Tax on Chain Stores. (1) On and after the effective date of this section and until December 31, 1935, an occupational tax is imposed on the gross income from retail operations of all persons engaged in the chain store business in this state.

"(2) Every person engaged in the business of operating or maintaining in this state under the same general management, supervision, or ownership two or more stores, mercantile establishments or places where goods, wares, or merchandise of any kind (including, without limitation because of enumeration, groceries," etc.), "are sold or offered for sale at retail and where the person operating such store, mercantile establishment or place receives the retail profit from the commodities sold therein, shall for the purposes of this section be deemed to be engaged in the chain store business; provided that this section shall not apply to co-operative associations organized under chapter 185 or to limited profit sharing co-operative associations organized under the laws of some other state and conducted on a genuine co-operative basis as defined in section 185.01, or to companies subject to the tax imposed in chapter 76 or to persons, firms or corporations subject to the occupational tax imposed in sections 70.41 and 70.42. But any company, as defined in chapter 76, operating or maintaining two or more stores or places where electrical or gas appliances are merchandised, shall be deemed to be engaged in the chain store business. The fact that the several retail stores or mercantile establishments are ostensibly owned or operated by different persons, firms, corporations or associations shall not defeat the application of this section where such stores or establishments are under the same general management, supervision or ownership. Lease and agency and lease and ownership agreements or contracts or operation under a common name shall, unless shown to the contrary, be deemed to constitute operation under the same general management, supervision or ownership.

"(3) Every person engaged in the chain store business shall pay an occupational tax on the aggregate gross income from its retail operations in this state, to be computed at the following rates:"

Stats., plaintiffs filed their reports of the gross income received for the period prior to January 1, 1934, and the tax commission certified the amounts of tax due from each of the plaintiffs. They paid that tax under protest, and commenced these actions for the recovery thereof, as provided in sec. 76.75 (9), Stats.

Each of the plaintiffs also alleged facts as to its particular method of operating its business, and contended that the statute was not applicable to its method of operating. However, it is unnecessary to state those facts here because the

(a) 6/20 of 1% of the gross income of $100,000 or less;

(b) 7/20 of 1% on the excess of the gross income over $100,000 and not exceeding $500,000;

(c) 8/20 of 1% on the excess of the gross income over $500,000 and not exceeding $1,000,000;

(d) 9/20 of 1% on the excess of the gross income over $1,000,000 and not exceeding $2,000,000;

(e) 1/2 of 1% on the excess of the gross income over $2,000,000 and not exceeding $3,000,000;

(f) 11/20 of 1% on the excess of the gross income over $3,000,000 and not exceeding $4,000,000;

(g) 12/20 of 1% on the excess of the gross income over $4,000,000 and not exceeding $5,000,000;

(h) 13/20 of 1% on the excess of the gross income over $5,000,000.

"(4) If fifty per cent or more of the gross income of any one store, mercantile establishment or place, maintained or operated by any person engaged in the chain store business is derived from retail operations, they shall be subject to the tax imposed in this section on their entire aggregate gross income derived from retail operations throughout the state. Gross income within the meaning of this section means gross income before deduction of cost of merchandise retailed and before deduction of any expense. Sales in bulk from retail stores directly to consumers shall be deemed to be retail sales. Gross income as used in this section shall not be construed to include any income derived from rentals on real estate."

Subsections (5) to (11), inclusive, relate to reporting the income to the tax commission and the latter's duties and powers in auditing the reports and imposing the tax and the recovery by the taxpayer of any payment under protest of an unlawful levy.

Section 2 of chapter 469 provides for the licensing of chain stores under provisions which were to become operative only in the event that the provisions of section 1 of the act are finally declared invalid as to any person or group.

decision in *Stewart Dry Goods Co. v. Lewis,* 294 U. S. 550, 55 Sup. Ct. 525, 527, 79 L. Ed. 1054 (hereinafter referred to as the *"Stewart Case"*), fully sustains the fundamental proposition contended for by the plaintiffs, that sec. 76.75, Stats., in imposing a graduated tax on gross incomes, is so arbitrary, unreasonable, and discriminatory that it denies to plaintiffs the equal protection of the laws guaranteed by the Fourteenth amendment, U. S. Const. As the United States supreme court has final jurisdiction to determine whether state laws violate the provisions of the federal constitution, and its decisions on that subject are binding on all courts, when that court has determined the nature and the effect of a certain state tax and that it violates the federal constitution and is therefore forbidden, its decision as to the nature and effect of the tax is controlling (*Galveston, Harrisburg & San Antonio R. Co. v. Texas,* 210 U. S. 217, 227, 28 Sup. Ct. 638), and its conclusions, in respect thereto, must be followed by the state courts. *Nunnemacher v. State,* 129 Wis. 190, 222, 108 N. W. 627; *Great Atl. & Pac. Tea Co. v. Harvey* (Vt.), 177 Atl. 423.

Although in sec. 76.75, Stats., the tax is called an "Occupational Tax on Chain Stores," that designation is not conclusive upon the courts, which must examine and consider the burden of a tax and the manner in which it is imposed in order to arrive at the actual character of the tax created. *Crew Levick Co. v. Pennsylvania,* 245 U. S. 292, 294, 38 Sup. Ct. 126, 62 L. Ed. 295, 297; *Dawson v. Kentucky Distilleries & Warehouse Co.* 255 U. S. 288, 41 Sup. Ct. 272, 65 L. Ed. 638; *Stewart Case, supra.* Thus, in the case last cited, the court said:

"In resolving the issue, we are not concluded by the name or description of the tax as found in the act; our duty is to ascertain its nature and effect. 'The substance and not the shadow determines the validity of the exercise of the power.'"

Consequently, although in the Kentucky statute, under consideration in the *Stewart Case,* the tax was called "an annual license tax," and also "an excise or license tax," instead of an "occupational tax," as in sec. 76.75, Stats., as none of those designations are conclusive, the difference in that respect between those designations in the two statutes is of no material significance. But in the *Stewart Case* it was held of controlling significance that the tax imposed by the Kentucky statute was to be computed "on the amount of the gross sales." In substance and legal effect that provision in the Kentucky statute is virtually the same as the provisions in sub. (3) of sec. 76.75, Stats., that—

"Every person engaged in the chain store business shall pay an occupational tax on the aggregate gross income from its retail operations in this state, to be computed at the following rates: . . . " and in sub. (4) of sec. 76.75, Stats., that—

"Gross income within the meaning of this section means gross income before deduction of cost of merchandise retailed and before deduction of any expense."

Manifestly, the amount which is the "aggregate gross income from . . . retail operations, . . ." before deducting therefrom the "cost of merchandise retailed and . . . of any expense," is necessarily the same as "the amount of the gross sales," upon which the Kentucky statute imposed the tax. Likewise, substantially the same in legal effect (although differing somewhat in the amounts specified as the rates), was the manner in which the tax rate was graduated and increased as the gross sales increased in amount progressively from the specified limitations of one bracket to the limitations of the next. Thus, while under sec. 76.75 (3), Stats., the rate was increased through seven brackets by 1/20th of 1 per cent for each successive bracket, from 6/20ths of 1 per cent on the first $100,000 of gross income to 13/20ths of 1 per cent on the excess over $5,000,000,

under the Kentucky statute the rate was graduated through eight brackets so as to increase from 1/20th of 1 per cent on the first $100,000 of gross sales, up to 1 per cent on gross sales of over $1,000,000. Whether the graduated tax thus imposed upon gross income or gross sales, under either sec. 76.75, Stats., or the statute under consideration in the *Stewart Case, supra,* is an excise tax or a tax upon property, presents a debatable question. But, as in respect to the nature of the tax to be imposed under sec. 76.75, Stats., there is equally applicable the court's statement in the *Stewart Case,* that—

"The act does not impose an income or profits tax or a license tax, is not an inspection measure or a police regulation. The tax is not confined to a particular method of merchandising. All retailers, individual and corporate, selling every description of commodities, in whatever form their enterprises are conducted, make up the taxable class. And the excise is laid in respect of the same activity of each of them—the making of a sale. Although no difference is suggested, so far as concerns the transaction which is the occasion of the tax, between the taxpayer's first sale of the year and his thousandth, different rates may apply to them. The statute operates to take as the tax a percentage of each dollar due or paid upon every sale, but increases the percentage if the sale which is the occasion of the tax succeeds the consummation of other sales of a specified aggregate amount,"—

there is also applicable here the determination in that case that, in view of the conclusions reached in *Brown v. Maryland,* 12 Wheat. 419, 6 L. Ed. 678; *Cook v. Pennsylvania,* 97 U. S. 566, 24 L. Ed. 1015; *Crew Levick Co. v. Pennsylvania,* 245 U. S. 292, 38 Sup. Ct. 126; *Panhandle Oil Co. v. State of Mississippi ex rel. Knox,* 277 U. S. 218, 48 Sup. Ct. 451; *Indian Motorcycle Co. v. United States,* 283 U. S. 570, 51 Sup. Ct. 601, such a tax as was imposed under the Kentucky statute was not an occupational tax, but was either a

tax on the property sold or an excise tax on the sales transactions.

As that determination of the United States supreme court, in respect to the nature of such a tax as was imposed by sec. 76.75, Stats., is controlling, there is also applicable that court's statements and conclusion that—

"Thus understood, the operation of the statute is unjustifiably unequal, whimsical, and arbitrary, as much so as would be a tax on tangible personal property, say cattle, stepped up in rate on each additional animal owned by the taxpayer, or a tax on land similarly graduated according to the number of parcels owned.

"The appellees seek to avoid the arbitrary character of the classification of sales for the purpose of imposing the levy by the claim that the act, properly construed, lays an excise upon the privilege of merchandising at retail and the exaction is made only for this privilege. They insist the amount of tax is merely measured by the volume of sales, and in this view the classification is not arbitrary if any reasonable relation can be found between the amount demanded and the privilege enjoyed. They endeavor to deduce such a relation from the alleged fact that a merchant's net income and his consequent ability to pay increase as the volume of his sales grows. The argument does not advance the case for the validity of the statute. Even in this aspect the classification is arbitrary, for the claimed relation of gross sales—the measure of the tax—to net profits fails to justify the discrimination between taxpayers."

By those conclusions, "the prevailing opinion," as Mr. Justice CARDOZO said in his dissenting opinion in the *Stewart Case,* "commits the court to a holding that a tax upon gross sales, if laid upon a graduated basis, is always and inevitably a denial of the equal protection of the laws, no matter how slight the gradient or moderate the tax."

Although upon its face the Kentucky statute differs from sec. 76.75, Stats., in that, while under the Kentucky statute a retail merchant operating but one store is likewise subjected

to the tax, under sec. 76.75, Stats., only those operating two or more stores under the same general management, supervision, or ownership are to be taxed, that difference does not constitute such a material distinction in the legal consequences under the statutes as to obviate the vice because of arbitrary and unreasonable discrimination between the proprietors who are included in the taxed class under sec. 76.75, Stats. Although the classification of chain stores for the imposition of license fees at rates higher than those applicable to single stores, and even fees graduated upward on each store or unit of stores as the total number increased, has been held reasonable because of advantages incidental to the conduct of multiple stores and obvious differences in chain methods of merchandising as contrasted with those practiced in the operation of but one store (*State Board of Tax Commissioners v. Jackson,* 283 U. S. 527, 51 Sup. Ct. 540; *Louis K. Liggett Co. v. Lee,* 288 U. S. 517, 53 Sup. Ct. 481; *Fox v. Standard Oil Co.* 294 U. S. 87, 55 Sup. Ct. 333), it should be noted that, in so concluding in *Fox v. Standard Oil Co., supra,* the court took into consideration the fact that the consequences of the graduation in the license fees, then under consideration, between chains differing in the number of units, were not disproportionate to the benefits derived from longer as compared to shorter chains, so as to result in arbitrary discrimination. It was just in that respect, however, that the court held in the *Stewart Case, supra,* that the imposition of varying rates of taxation upon the proprietors of stores in the taxable class solely by reference to the volume of their respective transactions, as measured by the gross sales or income derived therefrom, without regard to any reasonable relation between the graduations in the tax and the relative benefits derived by any one of them by reason of their operating either as part of a larger or a smaller chain, and without any regard to net profits or losses which they had derived from their operations, was so

unreasonable and arbitrary as to render the enactment void. Thus, on that subject, the court said:

"The law arbitrarily classifies these vendors for the imposition of a varying rate of taxation, solely by reference to the volume of their transactions, disregarding the absence of any reasonable relation between the chosen criterion of classification and the privilege the enjoyment of which is said to be the subject taxed. It exacts from two persons different amounts for the privilege of doing exactly similar acts because the one has performed the act oftener than the other. We hold the act unconstitutional and reverse the judgment."

That is equally applicable to the varying rates of taxation imposed by sec. 76.75 (3), Stats., solely by reference to the volume of the transactions, upon all proprietors of stores within the taxable class. Even though it was permissible to exempt the proprietor of but one store, the inequalities which actually resulted, upon imposing the tax for 1933 at the graduated rates prescribed by the statute, demonstrate that it was unduly discriminatory as between those who were to be taxed thereunder. Thus, it appears from allegations admitted by the defendant's demurrer, that a chain of food stores having a gross income of $6,800,000, had a net income of only $39,000; while a chain of women's wearing apparel stores, with only a gross income of $3,300,000, had a net income of $225,109. The food store chain was taxed $35,535.19, with rates of 11/20ths of 1 per cent on the fourth million, 12/20ths of 1 per cent on the fifth million, and 13/20ths of 1 per cent on all gross income in excess of five millions, while 11/20ths of 1 per cent on the fourth million of gross income was the highest rate at which the women's wearing apparel chain was taxed, a total of $15,107.49. Consequently, although the latter's net income was $225,000, as compared with the net income of only $39,000 earned by the food store chain, the highest rate at which the wearing apparel chain was taxed was but 11/20ths

of 1 per cent, as compared with the highest rate of 13/20ths of 1 per cent used in taxing the food store chain. Those figures demonstrate that the chains which would have to bear the heaviest burden of taxation under sec. 76.75, Stats., may be the least able to pay it. On the other hand, that a chain of comparatively fewer stores may have a larger gross income than a chain of many more, and that therefore the number of stores in a chain bears no constant relation to the amount of the gross income, appears from the following pleaded facts, which are admitted by the demurrers : An operator of forty-seven chain stores had a gross income of $3,350,000, while another operator of one hundred ten stores had a gross income of only $2,080,000, and a third operator of one hundred twenty units had a gross income of $1,044,000. In amount, the gross income from forty-seven store units was greater than that of the one hundred twenty and one hundred ten stores combined; and the gross income from the one hundred twenty stores was a smaller income than that of the one hundred ten units. The plaintiff, Ed. Schuster & Company, Inc., as the operator of but three stores had a gross income which exceeded the gross income of the above-mentioned operators of forty-seven stores, one hundred twenty stores, and one hundred ten stores, respectively, by amounts ranging from about $600,000 to $2,000,000. Likewise, comparing chains engaged in the same line of business, one chain of three hundred three stores in the grocery business, which had twice the number of stores that a chain of one hundred fifty stores had, received over three times the gross income of the one hundred fifty store chain, and, as between that one hundred fifty store chain and a one hundred ten store chain, although the larger chain had four-elevenths more stores than the smaller chain, its gross income exceeded the gross income of the smaller chain by only one twenty-fifth.

Those statistics all demonstrate that there is no constant or reasonable relation between gross income and net income, or between the gross income and the size, in so far as the number of stores is concerned, of an integrated chain, or between its gross income and its ability to pay a tax imposed at rates increased progressively for the higher brackets of its gross income; and that, consequently, there is no reasonable relation between such graduations in the rate of taxation and the actual relative value to the parties taxed, of the privilege, which is enjoyed by each of them, as an operator of a chain store, and which constitutes the subject that is taxed. It follows that, as the tax imposed under sec. 76.75, Stats., on the operator of a chain of but a few stores, may be at a higher rate than that which is imposed on the operator of a chain of many more stores, although the latter will enjoy the privileges which result from operating an integrated chain on a much larger scale than the former, the graduations in the rate of the tax do not bear, as between those two operators, any reasonable relation to the extent to which each enjoys the privileges. Because of the absence of that essential reasonable relation in the respects stated, the tax imposed under sec. 76.75 (3), Stats., is arbitrary and discriminatory, under the decision in the *Stewart Case,* and therefore sec. 76.75, Stats., is in violation of the Fourteenth amendment, U. S. Const., and void.

*By the Court.*—Orders reversed, and cause remanded with directions to enter an order in each action overruling the demurrer to the complaint.