STATE, Appellant, vs. SINCLAIR REFINING COMPANY, Respondent.

*November 10, 1938—February 7, 1939.*

For the appellant there were briefs by the *Attorney General, L. E. Vaudreuil,* deputy attorney general, and *Leonard C. Fons,* special counsel, and oral argument by *Mr. Vaudreuil.*

For the respondent there were briefs by *Olin & Butler,* attorneys, and *Byron H. Stebbins* and *E. L. Wingert,* of counsel, all of Madison, and oral argument by *Mr. Stebbins* and *Mr. Wingert.*

The following opinion was filed December 6, 1938:

NELSON, J. So many of the allegations of the complaint and answers as are necessary to an understanding of this controversy may be summarized as follows: The plaintiff is the state of Wisconsin. The defendant is a foreign corporation, duly licensed to transact business in this state. The legislature, on July 25, 1933, at its regular session, duly enacted ch. 469, Laws of 1933, entitled "An act to create section 76.75 and subsection (5) of section 20.09 of the statutes, relating to an emergency occupational tax on chain stores, providing penalties, and making an appropriation." The act was duly published on July 28, 1933, by its terms it became retroactively effective as of July 1, 1933. The act contained four sections. Section 1 imposed an occupational tax on the gross income from retail operations of all persons

engaged in the chain-store business in this state. Section 2, in part, provided:

"Section 2. If it is finally determined that the occupational tax on chain stores imposed in section 1 of this act is invalid, either in its entirety or in its application to any particular person or group, then such person shall immediately be required to secure a license and pay a license fee as hereinafter provided, effective as of July 1, 1933."

(1) Defines chain stores.

"(2) No person shall engage in the chain-store business in this state unless he shall first have secured a license to engage in such business from the departemnt of agriculture and markets. Such license shall be issued for the calendar year and shall be renewable annually.

"(3) Application for a license shall be made on a form to be prescribed and furnished by the department of agriculture and markets and shall set forth the name of the applicant, the name and the specific location of each retail store, mercantile establishment, or place operated or proposed to be operated in this state, and such other facts as the department may require.

"(4) The fee for a license to engage in the chain-store business shall be as follows: . . ."

Section 3 provided:

"Section 3. It is the intent of the legislature that in the event that the provisions of section 1 of this act are finally declared invalid as to any person or group, such person or group shall be required to pay the license fees prescribed in section 2 the same as if said section took effect on July 1, 1933, except for such period for which such person shall have paid a license fee under chapter 29, laws of the special session of 1931–32. It is also the intent of the legislature that in the event that section 2 of this act takes effect by reason of section 1 being declared invalid, the emergency board shall provide such funds for the department of agriculture and markets as may be necessary to carry out its functions under section 2 of this act.

"Section 4. This act shall take effect upon passage and publication and shall terminate on December 31, 1935.

"Approved July 25, 1933."

Some time after the enactment of said chapter Wadhams Oil Company and Ed. Schuster & Company, having paid taxes in compliance with the provisions of sec. 76.75 (sec. 1, ch. 469, Laws of 1933), but under protest, commenced actions in the circuit court for Dane county, against the state treasurer, to recover the amounts so paid. In those actions the state treasurer demurred to the complaints on the ground that they did not state facts sufficient to constitute causes of action. The circuit court sustained such demurrers, and appeals were taken to this court. This court held, on June 4, 1935, that sec. 1, ch. 469, Laws of 1933, violated the Fourteenth amendment to the constitution of the United States and was therefore void. The orders of the circuit court sustaining the demurrers were reversed, and the causes remanded with directions to enter orders overruling the demurrers to the complaint. *Ed. Schuster & Co. v. Henry, Wadhams Oil Co. v. Henry,* 218 Wis. 506, 261 N. W. 20. Thereafter, on June 20, 1935, there was entered and filed in the circuit court for Dane county, in the *Wadhams Oil Co. Case,* an order overruling the demurrer in accordance with the mandate of this court, and on the same day judgment was entered in accordance with the demands of the complaint. Thereafter, on June 24, 1935, an appeal was taken from said judgment to this court, and the judgment was immediately affirmed without opinion. Thereafter, on September 3, 1935, the state treasurer petitioned the supreme court of the United States for a writ of *certiorari,* which said petition was denied by said court on October 21, 1935. *Henry, State Treasurer. v. Wadhams Oil Co.* 296 U. S. 625, 56 Sup. Ct. 148, 80 L. Ed. 440. That at all times since July 1, 1933, the defendant has maintained and operated mercantile establishments, filling stations, or places so as to be engaged in the chain-store business within the meaning of sec. 2, ch. 469, Laws of 1933; that during the period from July 1, 1933, to Decem-

ber 31, 1933, the defendant operated and maintained in this state under the same general management, supervision, or ownership, two hundred ninety-six mercantile establishments, filling stations, or places where it sold gasoline and lubricating oil, and received from such places the retail profit on the commodities there sold; that the defendant was engaged in the chain-store business within the meaning of said sec. 2, ch. 469, and thereby subjected itself to the provisions thereof; that there was due and owing to the state of Wisconsin as and for license fees during such time, the sum of $14,132.50, with interest.

The allegations of the second cause of action are the same as those of the first cause of action, excepting those relating to the period of time,—January 1, 1934, to December 31, 1934,—for which the state sought to recover license fees under the provisions of sec. 2, ch. 469, and the amount thereof. The third cause of action is the same as the first cause of action, excepting as to the period of time,—January 1, 1935, to October 4, 1935,—and the amount of the license fees sought to be recovered.

Answering the first cause of action, the defendant denied that said sec. 2, ch. 469, ever became effective; alleged that in June, 1934, the tax commission of the state of Wisconsin certified to the defendant and to the state treasurer that it had computed and that there was due from the defendant as a tax under sec. 76.75, as enacted by said sec. 1 of said ch. 469, for the period commencing June 29, 1933, and ending December 31, 1933, the sum of $2,793.07, which amount the defendant, in accordance with such certification, and on July 14, 1934, paid to the state treasurer of Wisconsin under protest (these allegations merely supplemented the allegations of the complaint); alleged that the state treasurer, in his petition for a writ of *certiorari* in the *Wadhams Oil Co. Case* referred to in paragraph 6 of the amended complaint,

made by the attorney general of this state and special counsel duly appointed by the governor, asserted as grounds of his petition:

"1. The Wisconsin supreme court erred in finding and holding that the tax imposed under section 76.75 of the Wisconsin statutes for the year 1933, is arbitrary and discriminatory in violation of the Fourteenth amendment to the federal constitution.

"2. The Wisconsin supreme court erred in finding and holding that section 76.75 of the Wisconsin statutes for the year 1933, is in violation of the Fourteenth amendment to the United States constitution, and void;"

alleged that the Wisconsin legislature of 1935, duly enacted ch. 545, Laws of 1935, which was published on October 4, 1935, which, by its terms took effect upon said date and repealed sec. 1, ch. 469, Laws of 1933 (sec. 76.75), sub. (7) of sec. 20.09, and sec. 2, ch. 469, Laws of 1933, and which said ch. 545, imposed new taxes applicable to chain stores other than motor-fuel distributing companies, and imposed upon motor-fuel distributing companies the requirement of obtaining licenses and paying fees therefor in carrying on the business of distributing motor fuel in this state during the period commencing October 4, 1935, and ending December 31, 1935, and subsequent periods; alleged that after the denial of said petition for a writ of *certiorari* the judgment in the *Wadhams Oil Co. Case* was paid by the state treasurer; denied that the defendant ever subjected itself to the provisions of sec. 2, ch. 469, Laws of 1933, that it was ever required to pay the license fees prescribed by said sec. 2, ch. 469, and that there was then due and owing to the plaintiff for such license fees during the period of time from July 1, 1933, to December 31, 1933, any sum whatsoever. Answering the second cause of action, the defendant reiterated the denials and allegations contained in its answer to the first cause of action, denied that it ever subjected itself to

the provisions of said sec. 2, ch. 469, and that there was anything due or owing to the state of Wisconsin by it for the period commencing January 1, 1934, and ending December 31, 1934.

The only question which in our view needs to be determined is whether sec. 2, ch. 469, Laws of 1933, was ever in effect prior to its repeal. It was concededly repealed on October 4, 1935, by ch. 545, Laws of 1935, an act which imposed new taxes upon chain stores other than motor-fuel distributing companies and required the latter companies to obtain licenses and pay fees therefor as conditions of carrying on the business of distributing motor fuel in this state, commencing October 4, 1935, and ending December 31, 1935, and during subsequent periods. It will be recalled that said sec. 2, ch. 469, in part, provided:

"If it is finally determined that the occupational tax on chain stores imposed in section 1 of this act is invalid, either in its entirety or in its application to any particular person or group, then such person shall immediately be required to secure a license and pay a license fee as hereinafter provided, effective as of July 1, 1933."

and that section 3 of said chapter, in part, provided:

"It is the intent of the legislature that in the event that the provisions of section 1 of this act are finally declared invalid as to any person or group, such person or group shall be required to pay the license fees prescribed in section 2 the same as if said section took effect on July 1, 1933, except for such period for which such person shall have paid a license fee under chapter 29, Laws of the Special Session of 1931–32."

This controversy centers about the language: "If it is finally determined that the occupational tax on chain stores imposed in section 1 of this act is invalid . . . then" and "it is the intent of the legislature that in the event that the provisions of section 1 of this act are finally declared in-

valid. . . ." The plaintiff contends that section 1, was "finally determined" to be invalid or "finally declared invalid" on June 4, 1935, when this court declared that section 1 violated the constitution of the United States. The defendant contends that section 1 was not finally determined to be invalid until the United States supreme court denied the petition of the state treasurer for a writ of *certiorari*. In the *Wadhams* and *Schuster Cases*, section 1 was assailed on the ground that it violated the Fourteenth amendment to the constitution of the United States. This court, in those appeals, held that section 1 did violate that amendment. In so doing, we followed the law laid down by the United States supreme court in *Stewart Dry Goods v. Lewis*, 294 U. S. 550, 55 Sup. Ct. 525, 79 L. Ed. 1054. Since section 1 was assailed on the ground that it violated the constitution of the United States, the supreme court of the United States unquestionably had jurisdiction finally to determine whether it did violate that constitution. *Ed. Schuster & Co. v. Henry*, 218 Wis. 506, 510, 261 N. W. 20. The state treasurer, in petitioning the United States supreme court for a writ of *certiorari*, obviously recognized that the decision of this court was not a final determination. In his petition the treasurer asserted that this court had erred in finding and holding that the tax imposed under sec. 76.75, for the year 1933, was arbitrary and discriminatory and in violation of the Fourteenth amendment to the constitution of the United States, and that this court erred in finding and holding that said sec. 76.75 violated the Fourteenth amendment to the United States constitution and was void. The meaning of the language "finally determined invalid" is so clear, according to its common and approved usage, sec. 370.01 (1), Stats., as to leave no room for construction. The contention that our decision in the *Wadhams* and *Schuster Cases* was final when the United States supreme court had jurisdiction to reverse it and especially when the jurisdiction of the United States supreme

court had been invoked, cannot be upheld. In *United States v. Utah-Idaho Sugar Co.* (10th Cir.) 96 Fed. (2d) 756, 760, an agreement which had been entered into by the commissioner of internal revenue and a taxpayer who was contesting a tax, pursuant to a statute of the United States which authorized it, was considered. The agreement suspended the running of the statute of limitations "from the date of the agreement to the date of final decision" of another case then pending in the United States district court of Utah. The court there dealt with the language: "Date of final decision." In its opinion the court said:

"The precise question is whether the unexpired remainder of the statute of limitation should be computed from the date on which the judgment of this court was entered, or from the last date on which petition for *certiorari* could have been filed. The manifest object and purpose of the statute is plainly to conduce to the orderly determination of contested questions concerning income taxes through a minimum of litigation by enabling the commissioner and the taxpayer to agree mutually that the running of the statute shall be suspended until the identical or a closely kindred question is decided in some case then pending before the board of tax appeals or in court. The question thus in controversy is not adjudicated in the pending case with final and binding effect upon the parties thereto until the time has expired within which it is subject to review on appeal or *certiorari*. It must be assumed that in the enactment of the provision congress· was cognizant of the fact that such a judgment would not conclude the question with finality upon the parties to the action and with persuasive effect upon others as being determinative of their rights until it is no longer open to review on appeal or *certiorari*. Having this objective in mind, it seems manifest that congress intended to authorize the commissioner and a taxpayer to agree that the statute shall be suspended until there is a final judgment in the case already pending from which no appeal or review by *certiorari* can be had. Any other construction of the statute would be at variance with the obvious legislative purpose. The period is to be computed from the expiration of the time within which

a petition for *certiorari* could be filed. The suit was filed within that period, and it was not too late."

It is clear that had the supreme court of the United States granted the petition of the state treasurer for a writ of *certiorari* and had reversed the decision of this court, it could not be claimed that our decision finally determined the act to be invalid. It is our opinion that sec. 1, ch. 469, Laws of 1933, was not finally determined to be invalid until October 21, 1935, when the United States supreme court denied the petition of the state treasurer for a writ of *certiorari*. At that time sec. 2, ch. 469, had been repealed. It is clear therefore that there was no period of time prior to its repeal when it had the force and effect of law. Our conclusion renders it unnecessary to pass upon other questions discussed in the briefs.

*By the Court.*——Order affirmed.

A motion for a rehearing was denied, without costs, on February 7, 1939.