THE GREAT ATLANTIC & PACIFIC TEA COMPANY ET AL. *v.* ERWIN M. HARVEY, TAX COMMISSIONER ET AL.

February Term, 1935.

Present: POWERS, C. J., MOULTON, THOMPSON, and SHERBURNE, JJ., and BUTTLES, Supr. J.

Opinion filed March 14, 1935.

216

*Walter S. Fenton* for the plaintiffs (*Fenton, Wing & Morse* and *Sullivan & Cromwell,* of New York, of counsel for The Great Atlantic & Pacific Tea Co.; and *Fenton, Wing & Morse,* and *Putnam, Bell, Dutch & Santry,* of Boston, of counsel for First National Stores, Inc.)

*Lawrence C. Jones,* Attorney General (*Guy M. Page* and *Seymour P. Edgerton* of counsel) for the defendants.

MOULTON, J.   This is a proceeding in equity by which it is sought permanently to enjoin Erwin M. Harvey, the commissioner of taxes of the State of Vermont, and Lawrence C. Jones, the Attorney General of the State, and their successors in office, from enforcing, attempting, or undertaking to enforce, or taking any steps whatsoever to enforce the provisions of No. 24 of the Acts of 1933 (now P. L. Chapter 46, §§ 1123 to 1140, inclusive) against the plaintiffs, their officers, directors and agents, and further praying the court to decree the said act to be unconstitutional, null and void and of no force or effect whatsoever, and contrary to and in violation of the Constitutions of the State of Vermont and of the United States of America.

The Act in question is known as the "Gross Retail Sales Tax Act," and its provisions so far as material to this controversy are as follows:

> "Sec. 1123.   *Definition.*   The words 'retail merchant,' as used in this chapter, shall mean and include every person, firm, association, copartnership or corporation opening, establishing, operating or maintaining any store or group of stores under common ownership or management whether through stock ownership, stock control or otherwise for the purpose of and selling goods, wares or merchandise at retail in this state, except those exclusively engaged in gardening or farming and selling in this state their own products.
>
> "Sec. 1124.   *Computation of the tax.*   Each retail merchant shall pay an annual license tax for

the opening, establishing, operating or maintaining of any such store or stores, determined by computing the tax on the amount of gross sales as follows:

"One-eighth of one per cent on the gross sales from fifty thousand dollars to one hundred thousand dollars; one-fourth of one per cent from one hundred thousand dollars to two hundred thousand dollars; one-half of one per cent from two hundred thousand dollars to five hundred thousand dollars; one per cent from five hundred thousand dollars to seven hundred and fifty thousand dollars; one and one-half per cent from seven hundred and fifty thousand dollars to one million dollars; two per cent from one million dollars to one million two hundred and fifty thousand dollars: two and one-half per cent from one million two hundred fifty thousand dollars to one million five hundred thousand dollars; three per cent from one million five hundred thousand dollars to one million seven hundred and fifty thousand dollars; three and one-half per cent from one million seven hundred and fifty thousand dollars to two million dollars and four per cent on all sales above two million dollars."

Sections 1126 and 1129 provide for exemptions and credits, including the deduction of certain taxes paid the State or municipality, automobile registrations, and gasoline taxes.

The bill of complaint was originally brought by the Great Atlantic & Pacific Tea Company, a corporation organized under and in accordance with the laws of the state of New Jersey and duly authorized under the laws of Vermont to do business herein as a foreign corporation, and its material allegations are as follows:

The plaintiff is engaged in the business of selling at retail in Vermont groceries, meat, fruit, vegetables, poultry, and other food products, together with other incidental articles, and operates and conducts fifty-eight retail stores within the State, in direct competition with various other retail stores dealing in the same kind and class of goods and merchandise which in

many instances have a larger volume of gross sales per annum than the store of the plaintiff situated in the same community. Owing to the exemptions and deductions allowed by the act, such individual competing stores pay little or no tax while the gross sales of the plaintiff's stores when combined and aggregated subject each of the plaintiff's stores to taxation at the very highest rates provided under the graduated scale, and the plaintiff is obliged to pay a tax on the goods sold by each single store operated by it at a rate at least thirty-two times as high as that imposed upon its competitors in the same locality; and being subjected to a tax of four per cent on nearly thirty-five per cent of the volume of its merchandise when sold. It is alleged that the gross sales of the several members of the various cooperative associations of retail merchants which enjoy all of the benefits and advantages possessed by the plaintiff in the purchase and sale of merchandise, and whose individual gross sales are comparable to the sales of a great number of the plaintiff's stores when considered separately, and are as great or greater in volume if their sales were combined, pay little or no tax under the act. It is further alleged that by reason of the credit deductions and arbitrary exemption of $50,000 more than ninety-five per cent of the retail merchants in the State are wholly exempted from payment of any tax whatever under the act, and substantially all of the retail merchants having annual gross sales of less than $150,000 pay nothing thereunder. There are very few retail merchants having gross sales exceeding $100,000, and the annual gross sales of substantially eighty-five per cent of all retail merchants in the State are less than $50,000, and the act was intentionally designed and framed so as to exempt more than ninety-five per cent of the retail merchants and oppressively to tax a very few having gross sales in excess of $500,000. It is alleged that the margin of net profits in the retail grocery and meat business is very low compared to the gross volume of sales, and that in general the net profit from the conduct of a retail grocery and meat business does not exceed two and a half per cent, and that as a matter of actual experience the net profit is less than two per cent, and that for ten or twelve years past there has been a steady and consistent downward trend in the net profit on gross sales of such merchandise in Vermont and elsewhere; that the retail meat and grocery business is of a highly competitive character, and therefore a larger

volume of sales is essential because of the low margin of profit in order to secure a fair return on the capital invested, but that as the volume of sales increases the additional cost and expense and the augmented investment necessary in handling a greater volume of business do not cause the ratio of profit to increase in proportion to the increased volume of sales beyond well-defined limits. It is also alleged that the rate of tax as provided in the Act of two to two and one-half per cent upon gross sales between $1,000,000 and $1,500,000 equals or exceeds the total profits of such sales, and as the rates increase progressively to the maximum of four per cent the amount of the tax is greatly in excess of its total profit on the total sales.

In 1932 the gross total sales of the plaintiff in Vermont in all of its stores combined amounted to $3,052,166, and the rate of net profit was 2.337 per cent, and the gross sales for 1933 will be reduced and the rate of net profit less. On the basis of the 1932 sales the amount of the tax under the Act amounts to $77,649, from which a credit of $6,499 is to be deducted, leaving a net tax of $71,150, which is 2.331 per cent of its total gross sales and equals within $200 of its entire net profit from its business in Vermont. More than one-third of its entire gross sales is subject to a tax at the highest rate of four per cent. On the excess of its gross sales over $2,000,000 the net profit to the plaintiff in 1932 was $24,609 and the tax on such excess will amount to $42,086, or $17,477 more than the net profit thereon. That of all the retail merchants in Vermont, amounting to over five thousand, not over ten, or two-tenths of one per cent, have annual gross sales in excess of $500,000, and that only the plaintiff and one other retail merchant who is engaged in the grocery and meat business have gross sales in excess of $1,000,000, and then only when the gross sales of all their stores respectively are combined. Under the operation of the act, by reason of the highly competitive character of the grocery and meat business, any increase of the sale price of merchandise sold by the plaintiff to cover the amount of the tax would operate to the detriment of the purchasing public and would divert trade and custom from the plaintiff's stores to the other retail merchants.

It is alleged that while upwards of ninety-five per cent of the retail merchants in Vermont who have approximately seventy-five per cent of the total gross sales will not pay or contribute anything to the expense of government under the tax provided

in the act, the plaintiff, having substantially two per cent of such total gross sales, will be compelled to pay and contribute substantially fifty per cent of the total tax assessed and levied thereunder. It is also set forth that upon the failure of the plaintiff to file a return and pay the tax, the defendant Harvey will proceed to collect the tax and the penalty provided in the manner prescribed for the levy and sale of property for the nonpayment of taxes, or in some other proceeding, or by an action brought by the Attorney General against the plaintiff, or by proceedings to revoke the license of the plaintiff as a foreign corporation or otherwise, and that this may result in a multiplicity of suits. And further that the defendant Jones, as Attorney General, may institute criminal proceedings against the officers, directors, or agents of the plaintiff, with the possibility that such officers, directors, or agents will be subjected to a fine or imprisonment.

After the foregoing bill of complaint had been filed, the First National Stores, Inc., a corporation organized and existing under and by virtue of the laws of Massachusetts and duly qualified and authorized under the laws of Vermont to do business herein as a foreign corporation, by consent of all parties interested, intervened as a party plaintiff and filed its petition in which it adopted the allegations of fact contained in the original bill of complaint, except as to the result of the application of the act in relation to it. In that respect it alleges that it conducts seventy-two stores within the State of Vermont; that its gross sales for the year 1932 in all its stores combined amounted to $2,388,455, upon which it made a net profit of 2.475 per cent, which was higher than the average net profit in the retail grocery and meat business generally throughout the country; that under the terms of the act as interpreted by the defendant Harvey, the tax upon its gross sales would amount to $51,100, against which it would be entitled to a credit of $5,746, leaving the net tax of $45,354, which is 1.899 per cent of its entire net profit on its total gross sales in Vermont for the year; that more than thirty-seven per cent of its entire gross sales will be taxed at a rate of three per cent and over sixteen per cent of its gross sales will be taxed at the highest rate of four per cent, and that while on the excess of its gross sales over $1,500,000 it made a net profit of $21,979, the tax imposed upon such excess would amount to $31,788, or nearly $10,000 more than its profit on

such sales. It is also alleged that the intervenor and the Great Atlantic & Pacific Tea Company are the only retail merchants in Vermont whose annual gross sales are in excess of $1,000,000 and this is so only when the total gross sales of all their stores respectively are combined; and that during 1932 the intervenor had approximately one and one-half per cent of the total gross sales of all the retail merchants in Vermont, but that the act compels it to pay approximately thirty per cent of the total tax and that its total gross sales for the year 1933 will exceed its gross sales for 1932, and the tax will be still greater.

The so-called gross retail sales tax is claimed to be in violation of the federal Constitution in that it denies to the plaintiffs and all other retail merchants similarly situated due process of law, and is an attempt to levy a confiscatory tax upon them and to take their property as an arbitrary exaction; and in that it denies to them the equal protection of the laws, since the tax is unreasonable, disproportionate, and discriminatory and based upon a classification which has no rational ground and bears no just relation to the purpose to be served; and in that it abridges the rights, privileges, and immunities of the citizens of the United States.

It is also claimed to be in violation of Chapter I, Article 9 of the Constitution of Vermont, in that the plaintiff and others similarly situated are compelled to make contribution beyond their just share and proportion; and that the Act is in violation of Article 1 and Article 7 of Chapter 1 of the Constitution of Vermont, in that it denies to the plaintiffs the natural, inherent, and unalienable right to acquire, possess, enjoy, and defend its property and of its inherent right to pursue a lawful business, and denies to the plaintiffs the benefits and advantages accorded to others who are a part of the community.

A temporary injunction was issued in accordance with the prayer of the bill, and thereafter the defendants filed a demurrer. Subsequently, and before any hearing had been had, the Legislature at the special session of 1934 passed a so-called Remedial Act, Laws of 1934, Sp. Session, No. 3, entitled "An Act in addition to Chapter 46 of the Public Laws Relating to the Tax on Gross Retail Sales," the first section of which is as follows:

> "Section 1. If after hearing in any court of competent jurisdiction the rate of taxation pro-

vided by any clause of section 1124 of the Public Laws shall be deemed to be confiscatory as to any retail merchant then said merchant shall be liable to pay said graduated tax up to and including the highest rate specified in said chapter which, taken in connection with the rest of said tax, is not confiscatory as to him; and he shall pay said rate for all sales above the minimum amount to which said rate is applicable under said section.''

The defendants thereupon filed an amended demurrer, and a hearing was had before the chancellor who entered a decree overruling the demurrer, adjudging the act in question to be unconstitutional, and granting the injunction sought by the bill. The defendants have appealed to this Court.

The demurrer contains an assignment of thirty-one grounds, but it is not necessary to recite them because the broad question presented is that of the constitutionality of the act in question with regard to the various objections against it urged by the plaintiffs.

■ It serves no purpose to determine the nature of this tax whether a ''chain store tax'' or not, or whether an excise tax or a tax upon property. The fundamental question has been decided since the argument of this case, by the Supreme Court of the United States in *Stewart Dry Goods Co. et al.* v. *John B. Lewis et al.*, 79 L. ed. —, 55 Sup. Ct. — (decided March 11, 1935), in which the validity of the gross sales tax of Kentucky was in issue. That act (Chapter 149, Acts of 1930, page 475) defined in paragraph one the term ''retail merchant'' in precisely the same manner in which it is defined in P. L. 1123. By paragraph two every retail merchant was required to pay an annual license tax for the opening, establishing, operating, or maintaining of any store or stores determined by computing the tax on the amount of gross sales, the rates for this computation commencing at one-twentieth of one per cent of the gross sales of $400,000 or less, and increasing on each additional $100,000 of sale between $400,000 and $1,000,000, the rate between $900,000 and $1,000,000 being seventeen-twentieths of one per cent, and the rate on the excess of gross sales over $1,000,000 being one per cent. Credit was allowed for other taxes paid. It was held that in legal effect this was a tax upon sales and ''thus under-

224

stood, the operation of the statute is unjustifiably unequal, whimsical, and arbitrary, as much so as would be a tax on tangible personal property, say cattle, stepped up in rate on each additional animal owned by the taxpayer, or a tax on land similarly graduated according to the number of parcels owned;'' and that the statute ignored ''the form of organization and the method of conducting business,'' and did not purport to levy a tax upon incomes.

> ''The taxable class is retail merchants, whether individuals, partnerships or corporations; those who sell in one store or many; those who offer but one sort of goods and those who through departments deal in many lines of merchandise. The law arbitrarily classifies these vendors for the imposition of a varying rate of taxation, solely by reference to the volume of their transactions, disregarding the absence of any reasonable relation between the chosen criterion of classification and the privilege the enjoyment of which is said to be the subject taxed. It exacts from two persons different amounts for the privilege of doing exactly similar acts because the one has performed the act oftener than the other.''

It was also held that even upon the theory that the amount of the tax was merely measured by the volume of sales and that a merchant's net income and his ability to pay the tax increased as the volume of his sales increased, the classification was still arbitrary, and the claimed relation of gross sales to net profits failed to justify the discrimination between taxpayers, because gross sales did not bear a constant relation to net profits, which varied from year to year in the same enterprise, and with the character of the business as well as with its volume. The claim that it was not shown that in actual operation the tax was unduly burdensome or harmful to any of · the plaintiffs, or amounted to a confiscation of their property, was said to be irrelevant to the issue of inequality.

This decision is controlling in the instant case. The Supreme Court of the United States is the ultimate authority upon questions arising under the federal Constitution. It is obvious that

the Vermont statute is more drastic in its rates and more unequal in its operation than the Kentucky statute. Under the Kentucky act, it appeared by the record before the Supreme Court that two merchants whose gross sales amounted to eight per cent of the gross sales of all the merchants in the state, would have paid more than half the total tax due from all those subject to the impost. Here, by the allegations of the bill of complaint which are admitted by the demurrer, it appears that the two plaintiffs, whose gross sales were, respectively, two per cent and one and one-half per cent of the total gross sales, would, together, pay eighty per cent of the entire tax. If the Kentucky act offends the Fourteenth Amendment, so does the one in issue before us. They are basically the same. Our so-called remedial act (Act of 1934) does not touch the question which, as we have seen, is one of classification, and not of confiscation.

It is not necessary to decide whether the federal Constitution has been violated in other respects, or whether the act is repugnant to the Constitution of Vermont, further than to point out that the equality clause in the federal Constitution and the proportional clause in the Vermont Constitution are in effect the same so far as the question of classification is concerned. *Clark* v. *City of Burlington*, 101 Vt. 391, 409, 143 Atl. 677. Regarding this tax as an excise, the same principle applies. *State* v. *Caplan*, 100 Vt. 140, 152, 135 Atl. 705.

We hold, therefore, that the provisions of section 1124 are unconstitutional and void, and this infirmity affects and renders inoperative all of the sections contained in Chapter 46 of the Public Laws.

*Decree affirmed, and cause remanded.*