Argued February 10; affirmed March 23, 1937

# BELL POTATO CHIP CO. v. ROGERS ET AL.

### (66 P. (2d) 287)

*Charles W. Swan*, City Attorney, of Newberg, and *Eugene E. Marsh* and *E. B. Cummins*, both of Mc-Minnville, for appellants.

*Wilber Henderson*, of Portland (Henderson & Warner, of Portland, on the brief), for respondent.

KELLY, J. The ordinance in suit defines a wholesale trade vehicle to mean and include any traveling conveyance operated for the purpose of selling or delivering goods, wares or merchandise (except any article of food in its raw state or condition, which was actually grown or produced by the operator thereof or some member of his family) to any other person in the city of Newberg for resale; requires every person desiring to operate such vehicle to make application in writing for a license stating the name and place of residence of the applicant, the type of vehicle to be used, and, if a motor vehicle, the name of the manufacturer, model, rated capacity, and current license number; the kind or kinds of goods, wares or merchandise proposed to be sold or delivered from such vehicle; the names of the persons who will operate said vehicle while in the city of Newberg; and, if food is to be transported, whether such food is to be contained in wrappers, boxes, cases or other containers in such manner that the food can not come in contact with the hands or any portion of the body of the person handling it. Said ordinance also requires every operator transporting food exposed to contact with the hands or any portion of the body to have a certificate of the health officer of the city of Newberg, or an approved, licensed physician, to the effect that such operator is not af-

flicted with any infectious or contagious disease; said ordinance further requires said application to be accompanied by a certificate of the chief of police of the city of Newberg that said vehicle has been by him inspected and in all respects complies with the terms of said ordinance; and if said vehicle is to transport foodstuffs, said ordinance requires said application to be further accompanied by a certificate of the health officer of the city of Newberg, or an approved licensed physician, that the operator has been examined and complies with the terms of said ordinance.

Said ordinance provides for the payment of a fee of $6.25 per quarter year or fraction thereof; requires said vehicles used to transport foodstuffs to be so constructed as to protect the same from the sun, flies, dust and contamination; requires wholesale trade vehicles used for transporting or delivering gasoline, kerosene, diesel oil, fuel or lubricating oil to be equipped with fire extinguishers, a steel chain or suitable rod fastened to the frame vehicle and long enough to touch the street and with suitable valves, hose and containers.

Said ordinance imposes a penalty of fine or imprisonment for its violation.

Among other things, the complaint alleges:

"That in addition to the vehicles of plaintiff there are various and sundry persons operating vehicles for commercial purposes upon the streets of Newberg, namely: persons maintaining business houses both within and without Newberg and operating delivery wagons within Newberg for delivery to consumers; also persons who grow or produce articles of food and make delivery of the same within the City of Newberg, none of which are licensed in the manner in which motor vehicles are that fall within the scope of ordinance No. 806 aforesaid; that various persons handle food-

stuffs within Newberg, namely: retail clerks, delivery clerks and persons who sell articles of food in its raw state or condition which is grown or produced by such person or his family, none of which are required to submit to physical examinations as are those required by said ordinance No. 806.''

■ A general demurrer to said complaint was over-ruled, defendants failed to answer or otherwise plead within the time fixed therefor by order of the court. The effect of the demurrer is to admit the above quoted allegation in plaintiff's complaint in so far as the same is relevant.

The decisive question here is whether said ordinance is discriminatory.

Our state constitution provides that,—

''No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.'' Oregon Constitution, Art. I, § 20.

In other words, the question before us is whether the classification made by said ordinance is reasonable or arbitrary and discriminatory.

It is urged by defendants that the primary object or purpose of the ordinance is the protection of the public health and the minimizing of traffic hazards in the business section of the city.

We must decide, therefore, whether there is any substantial distinction between operators of vehicles mentioned as subject to said ordinance, and those omitted therefrom, having in view the objects to be attained, namely, the protection of the public health and the minimizing of traffic hazards.

As to the one class, expressly exempted from the effect of said ordinance, the only distinction is that

the article of food transported be actually grown or produced by the operator of the vehicle or some member of his family. Obviously, the matter of who it is that grows or produces articles of food has no effect upon the public health or traffic hazards where such articles are being transported upon or over the streets and highways of a city. Such a matter sheds no light upon the question whether such transportation is inimical or safe, sanitary or unsanitary.

It is likewise true that, whether the articles being transported are to be resold or are to be immediately consumed upon delivery, they are equally sanitary or unsanitary, as the case may be; and their transportation creates exactly the same traffic hazards in either case.

"In determining what is within the range of discretion and what is arbitrary, regard must be had to the particular subject of the state's action." *Smith v. Cahoon*, 283 U. S. 553 (51 S. Ct. 582, 75 L. Ed. 1264).

In the case last cited, a statute of Florida was held invalid as applied to private carriers: Laws of Florida, 1929, c. 13700. The statute required every auto transportation company to obtain certificate of public convenience and give bond or insurance policy, but excepted those engaged exclusively in transporting agricultural, horticultural, dairy or other farm products and fish, oysters and shrimp from point of production to assembling or shipping point en route to primary market, as well as motor vehicles used exclusively in transporting or delivering dairy products.

We quote from the opinion rendered by Mr. Chief Justice Hughes:

"In the present instance, the regulation as to the giving of a bond or insurance policy to protect the public generally, in order to be sustained, must be

deemed to relate to the public safety. This is a matter of grave concern as the highways become increasingly crowded with motor vehicles, and we entertain no doubt of the power of the state to insist upon suitable protection for the public against injuries through the operations on its highways of carriers for hire, whether they are common carriers or private carriers. But, in establishing such a regulation, there does not appear to be the slightest justification for making a distinction between those who carry for hire farm products, or milk or butter, or fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities. So far as the statute was designed to safeguard the public with respect to the use of the highways, we think that the discrimination it makes between the private carriers which are relieved of the necessity of obtaining certificates and giving security, and a carrier such as the appellant, was wholly arbitrary, and constituted a violation of the appellant's constitutional right. 'Such a classification is not based on anything having relation to the purpose for which it is made.' Air-way Electric Appliance Corporation v. Day, 266 U. S. 71, 85, 45 S. Ct. 12, 15, 69 L. Ed. 169; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 563, 564, 22 S. Ct. 431, 46 L. Ed. 679; Southern Railway Co. v. Greene, 216 U. S. 400, 417, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247; Truax v. Corrigan, 257 U. S. 312, 332, 333, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. Ed. 770.''

The case of *Continental Baking Company v. Woodring*, 286 U. S. 352 (52 S. Ct. 595, 76 L. Ed. 1155, 81 A. L. R. 1402), is distinguishable from the instant case in that the exemptions from the general law regulating motor carriers within the state were based upon recognized grounds of public policy.

The Motor Vehicle Act of Kansas, Laws of 1931, c. 236, is the statute there construed. It provided that in addition to the regular license fees or taxes imposed

upon public motor carriers of property or of passengers, and private motor carriers of property, there should be assessed against and collected from every such carrier a tax of five-tenths mill per gross ton. One of the exemptions applied to vehicles operating wholly within a city or village. The court held that such operations are subject to local regulations; that in protecting its highway system, the state was at liberty to leave its local communities unembarrassed and was not bound either to override their regulations or to impose burdensome additions. Another of the exemptions applied to certain private motor carriers, who have an established place of business or base of operations within a city or village and operate within a radius of twenty-five miles beyond the municipal limits. The federal supreme court approved the holding of the district court to the effect that there is "a penumbra of town" that is outside municipal limits, and delivery trucks of those having establishments within the municipality, in their daily routine repeatedly cross these limits in going back and forth into these outlying additions; that trucks of that class use the state improved highways but slightly for the streets of these outlying additions are not generally a part of the state system, and that the practical difficulty in keeping track of the mileage of such delivery trucks, as they cross back and forth, is well-nigh insuperable and that the revenue to be gained from such use would be insignificant and the cost of collection large.

Thus it is to be noted that there is a reasonable basis for the classification prescribed in the Smith-Cahoon case; but it is difficult to understand why the operator of a vehicle carrying goods for resale should be compelled to submit to the terms of the ordinance in suit while those carrying identically the same goods for use

or consumption are exempt from its terms. Certainly, if it requires entry upon the more congested traffic areas to deliver such goods to the merchants for resale, it must also require entry upon the same areas by vehicles taking such goods away for ultimate use or consumption. The goods retain their distinctive character and the wear and tear upon the highways can not be appreciably different when they are brought to the merchant than when they are taken away from the merchant for delivery to the ultimate consumer. It is to be borne in mind that the size of the vehicle, the weight of the load and the frequency and extent of the use of the highway have no bearing upon the question, who shall pay the license fee, submit to health examination and subject his vehicle to official inspection.

It would be embarrassing for an unlicensed operator to rely upon the owner's statement that his load was intended for ultimate consumption and before delivery thereof could be made, find that the owner had changed his mind and had concluded to resell it.

The mental condition of the owner of a commodity with respect to whether he will offer it for resale is not a reasonable basis for requiring those who handle such commodity to pay a license fee and subject themselves to physical examination and their vehicles to official inspection when the owner's mental reaction indicates a purpose to resell or for relieving them of any such requirement when the owner intends to use or consume such commodity.

■ We agree with the learned judge of the trial court that the ordinance in question is discriminatory and therefore invalid.

The decree of dismissal is affirmed.

CAMPBELL and ROSSMAN, JJ., not sitting.