## Paducah Automotive Trades Ass'n et al. v. City Of Paducah.

March 26, 1948.

Wheeler, Marshall & Shelbourne for plaintiffs.

Adrian H. Terrell for defendant.

OPINION OF THE COURT BY JUDGE KNIGHT—Denying motion.

On December 23, 1947, the City of Paducah, Ky., a city of the second class having the City Manager form of government, through its Board of Commissioners adopted the ordinance involved in this litigation, it becoming effective under its terms on January 1, 1948.

The ordinance, an occupational license ordinance, is a comprehensive one of 84 sections, including an extensive classification schedule, is intended to, and does, cover practically all occupations, including wholesalers, retailers, manufacturers and the various professions engaged in business for gain in the City of Paducah. No attempt will be made to set out the terms of the ordinance in any detail. It is sufficient to say that it classifies the various types of business and fixes the license taxes on the basis of the gross receipts from the business. The tax is graduated on the basis of volume of gross receipts of the trade or occupation involved. In general the ordinance follows the form which such ordinances have taken in cities which have adopted occupational license taxes for revenue or regulation purposes.

Plaintiffs are engaged in the automotive trade in one form or another and brought this suit as a class suit on behalf of themselves and all others affected by the proposed tax, against the city, to enjoin the enforcement of the ordinance and asked for a binding declaration of rights declaring the ordinance void and unenforcible. The court below denied the temporary injunction sought and the plaintiffs have filed a motion in this court asking

that this court, or a judge thereof, direct the judge of the McCracken Circuit Court to issue a temporary injunction in accordance with the prayer of the petition.

Since the record appears to be complete and the questions involved can in all probability be disposed of on this motion for a temporary injunction, we have complied with the request of the parties by publishing an opinion giving the reasons for our decision. The whole court sat in the consideration of this case.

### Grounds for Attack.

The petition sets out some eight grounds on which plaintiffs attack the validity of the ordinance in question. In their brief filed in this court, the attack falls into three main grounds:

1. That the title to the ordinance is defective.

2. That the ordinance was not properly advertised.

3. That the city was not authorized to levy such taxes.

There are also several minor grounds which will be treated together under another division.

We will consider these questions in the order in which they have been stated.

### The Title.

The title of the ordinance reads as follows: "An ordinance fixing and regulating the license taxes, and manner and form of granting and issuing same on the various lines of business, trades, occupations, professions, vocations and callings in the City of Paducah, Kentucky, and providing penalties for non-payment thereof, and for violation thereof, and making it unlawful to engage in any such lines of business, trades, occupations, professions, vocations and callings without first paying the license tax and procuring licenses as provided herein; repealing all ordinances in conflict therewith, and providing a separability clause."

The statute to be complied with is KRS 84.100 and reads as follows: "No ordinance shall embrace more than one subject, and that shall be expressed in the title."

Plaintiffs take the position that the title is mislead-

ing, does not show the nature of the exactions required by the ordinance and does not indicate the true purpose of the ordinance, which is to raise a large sum of money to be placed to the credit of the general revenue fund of the city. As we interpret this principal complaint, it is more clearly expressed by the contention that under the title, the ordinance purports to cover regulation of business, but the ordinance itself shows it is principally for revenue purposes. Three other minor complaints against the title, mentioned in the brief, are that the ordinance, which levies a gross receipts tax, also attempts to levy a tax on intangible property, a tax on manufacturing and a tax on vehicles, and there is no reference in the title to show that the latter three matters are covered by the ordinance.

In construing sec. 51 of the constitution in its relation to legislative acts, which is analogous to the section of the statute being construed in its relation to ordinances of cities of the second class, we have said that the particular manner in which the object of an act is to be accomplished need not, and indeed cannot, be expressed in the title. If the title indicates with reasonable clearness the subject to be legislated upon, and the act itself is confined to that subject, that is all that the constitution requires. Collins v. Henderson, 74 Ky. 74. It is impracticable to state in the title the details or particularize the objects and means, which may relate to the main subject necessary and proper to be embraced in the body of the act, Commonwealth v. Bailey, 81 Ky. 395. It has always been held that if the various provisions of the act all relate to and are germane to the subject expressed in the title, and if the subjects embraced in the act, but not specified in the title, have congruity or natural connection with the subject stated in the title or are cogent and related thereto, the requirement of the constitution is satisfied. City of Louisville v. Wehmhoff, 116 Ky. 812, 76 S. W. 876, 79 S. W. 201. In other words, the universally declared rule is that if the contents of the act or ordinance are germane to the accomplishment of the purpose of the subject stated in the title, then such requirements are not violated. The title need not be a complete index of the act or ordinance if it is sufficiently broad to inform the casual reader of the subject and purposes covered in the legislation.

Applying these principles to the title of this ordinance as it relates to subjects covered in the ordinance and the objects sought to be accomplished thereby, we are of the opinion that it fully meets these requirements. Any one casually reading the title will see at a glance that it fixes and regulates license taxes on the various lines of business, trades, occupations, professions, vocations and callings in the City of Paducah. Certainly this is broad enough to cover a manufacturer, who is clearly in a "line of business" and clearly has an "occupation." Nor do we think the title defective because it does not indicate that the ordinance taxes intangibles. As we construe the act, it does not tax intangibles; it simply levies the taxes on the basis of the gross receipts whether those receipts come to the merchant or manufacturer at once in cash or on a deferred basis of credit or deferred payment. The deferred payments or credits are not taxed as accounts but are counted as part of the receipts at the time the transaction is made as a basis for fixing the bracket into which he will fall in fixing the amount of tax which he will owe. It is clear that the tax provided in the ordinance is a tax on the privilege of doing business and is not a property tax either on tangibles or intangibles.

Plaintiffs would be on sounder ground in the contention that the title is defective if, in fact, it attempted to tax vehicles in addition to imposing license taxes, as they contend, for this would relate the act to a different subject. We do not construe sections 23 and 42 of the ordinance as taxing vehicles or placing license tax on vehicles as such. As we construe these sections, they place a license tax on two types of business using only vehicles for carrying on their business. of coal peddler or express, transfer and trucking business. Their taxes are fixed under the general schedule of charges but provides that their minimum tax shall be fixed at so much for each vehicle employed and provides for an emblem or insignia to be displayed on each vehicle to show the tax has been paid. We do not think this invalidates the ordinance as it relates to its title.

On this phase of the case, we do not think the title of the ordinance is defective or that it covers more than one general subject, that of license taxes, or that there

is any subject in the ordinance not expressed in the title.

## Publication.

To our minds the question of publication presents no serious problem in deciding the validity of this ordinance. Defendant contends that publication of an ordinance is not necessary under the charter of second class cities organized under the City Manager form of government; that KRS 89.540 which provides that "each resolution, measure or ordinance shall be signed by the mayor or by two commissioners and recorded before it shall take effect" embraces all the essential steps to make an ordinance effective; that the only section of the act relating to the city manager form of government referring to publication of ordinances is KRS 89.620 which requires publication only where some question involved in the ordinance is to be submitted to the voters at an election. Plaintiff insists that KRS 84.100 requiring the publication of ordinances of cities of the second class organized under the councilmanic form of government and KRS 61.290 are still applicable and necessitate publication of all ordinances of the City of Paducah, including this one. We need not decide that question in this case but leave it for some future determination when there has been no advertising and when that is the point to be decided and it would not be dictum, as it would be in this case. In the present case there was actual advertising and the only question to be decided is the sufficiency of that advertising. In this case the publication was accomplished by the inclusion in the regular January 7, 1948 issue of the Paducah Sun-Democrat of a separate folder or tabloid section of four pages, each 11½ inches wide by 17 inches in length, this section bearing the name of the Paducah Sun-Democrat at its head and containing nothing but the ordinance. On the first page of the complete newspaper of that date was a blocked out section headed "City Occupational License Ordinance Is Printed Today," and containing three other sentences calling attention to the special tabloid form on which it was printed so that it could be kept for ready reference. According to the affidavit of the publisher filed in the record, with a copy of the paper and the tabloid section filed as exhibits, the Paducah Sun-Democrat is the only daily newspaper

that is published in Paducah; that it is the official newspaper of the city, and has the largest circulation in McCracken County; that the special tabloid section containing the printed ordinance was inserted in every newspaper of that date and delivered to every subscriber residing in the City of Paducah. Plaintiffs contend that this publication on separately numbered sheets of different size paper was not publication in a newspaper within the meaning of the statutes, and cites the case of Reagan v. Duddy, 78 S. W. 430, 25 Ky. Law Rep. 1664, in support of their contention. Clearly that case is not applicable to the present situation. In that case publication was made in a small paper known as. the "Official Record," a paper which contained no news items of general interest but published only the routine statistics emanating from official sources, such as births, deaths, building permits, real estate transfers, court dockets and such items as would interest only a limited class of people such as lawyers, real estate dealers and contractors. It also contained a few advertisements that would appeal to the same kind of people. This court held, and properly we think, that that was not a newspaper of general circulation. In the present case the inserted section was just as much a part of the newspaper in which it was inserted and circulated as are the various sections of the large metropolitan dailies which often contain many sections, some of varied and different sizes. We think that the publication of the ordinance in the tabloid section and its circulation with the official newspaper, as part thereof, not only met all the requirements of statutory publication but that it was a positive advantage to the taxpayers to be affected because of its handy use as a readily available copy of the ordinance long after yesterday's newspaper had been discarded to the collectors of old waste paper. We, therefore, conclude that there is no merit to this contention of the plaintiffs.

## Is City Authorized To Levy Such Taxes?

We come now to the main question involved in this case and that is the right of the City of Paducah to enact and enforce an ordinance of this character. We look first to our state constitution to see if that instrument has given to the legislative body of the state the power to confer on its municipalities, which would have

no such inherent right, the right to levy an occupational or privilege tax. So much of sec. 181 as is pertinent reads as follows: "The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax; and may, by general laws, delegate the power to counties, towns, cities and other municipal corporations, to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations and professions."

Under authority of the above section, the legislature by KRS 84.190, which is the charter for cities of the second class, has extended this power to these cities in the following language: "The general council may, by ordinance: License, tax and regulate all trades, occupations and professions." And by KRS 92.280 concerning revenue and taxation of cities other than first class has again extended this power to these cities in the following language: "The legislative body of each city of the second to sixth class may also impose license fees on stock used for breeding purposes, and on franchises, trades, occupations and professions, and may provide for the collection of such fees."

If language means anything, it means that by these constitutional and statutory provisions, cities of the second class have been given plenary power to enact ordinances imposing license taxes on trades, occupations and professions such as has been done under the ordinance here involved, provided such license taxes are reasonable and are based on proper classifications. Certainly the authority to pass such an ordinance is as broad and complete as is the authority given to cities of the first class under KRS 91.200, 91.260 and 91.270 under which the City of Louisville, the only city of the first class, has levied such taxes since the adoption of the constitution of 1891 and the legislation thereunder enacted in 1893. Indeed, Louisville has been restricted in such matters more than have cities of the other classes in that Louisville has been required to use the proceeds for sinking fund purposes exclusively, a restriction partly released by the recent session of the legislature (1948). Therefore, in the absence of a clear cut case from this state involving a city of the second class, none

of which we have found by independent search or which have been cited by either side in this case, we think the case of Gordon v. City of Louisville, 138 Ky. 442, 128 S. W. 327, is clear authority for the imposition of a license or privilege tax by cities of lower classes. That case involved only merchandise brokers who were contesting the ordinance as it applied to them but the ordinance itself covered many other types of business, trades and professions, as does the ordinance being construed here. We think the opinion in that case, written by Judge Carroll, provides the answer to every objection raised by the plaintiffs in this case as to classification of businesses and the division of these classes into taxation brackets based on volume done. It will not, therefore, be necessary to unduly lengthen this opinion by repeating here what was said there when that case is available to all who are interested in the subject.

Other cases upholding limited classification of businesses and occupations under license taxing ordinances, both in cities of the second class, are City of Newport v. French Bros. Bauer Co., 169 Ky. 174, 183 S. W. 532, and Young v. City of Lexington, 235 Ky. 822, 32 S. W. 2d 410, in both of which many other cases are cited.

The rule of law applicable to classification ordinances similar to the one here involved, but on a lesser scale and in a lower class town, was clearly stated by Judge Dietzman in City of Danville v. Quaker Maid, Inc., 211 Ky. 677, 278 S. W. 98, 43 A. L. R. 590, in which it was stated: "It is agreed that, where a license tax is imposed upon a class of persons engaged in a particular business, trade, or occupation, then all persons engaged in such trade, occupation, or business are subject to the tax, and it must be uniform upon the class singled out for taxation. It is also agreed that persons engaged in the same trade, occupation, or business may be classified, and a different license tax imposed on each class, provided the classification is made upon a natural and reasonable basis." (Citing many cases.)

In the light of these authorities from this state, we do not deem it necessary to analyze or regard as of binding effect on us the case of Carter Carburetor Corp. v. City of St. Louis, Mo. Sup., 203 S. W. 2d 438, cited by plaintiffs. We know not the constitutional or statu-

tory authority from which it springs nor the type of ordinance involved. However, from the quotation in plaintiffs' brief, it appears to be a gross tax on salaries, wages and commissions. The court in its opinion said it was not a license tax under the police power (such as we have in the case at bar) but that it was a species of income tax and that the General Assembly had never authorized municipalities to impose an income tax, just as our Kentucky General Assembly has made no such authorization to Kentucky cities. Nor do we deem it necessary at this time to analyze or quote from the cases from other jurisdictions cited by defendant upholding one or more features of the type of ordinance involved in this case.

Plaintiffs rely heavily on the case of Stewart Dry Goods Company v. Lewis, 294 U. S. 550, 55 S. Ct. 525, 79 L. Ed. 1054, in which the United States Supreme Court invalidated Kentucky's gross sales tax which had been previously upheld by the Court of Appeals of this state in the case of Moore v. State Board, etc., 239 Ky. 729, 40 S. W. 2d 349. The decision in the Supreme Court was by a divided Court, the majority opinion representing the so-called conservative element then prevalent in the Court. The minority opinion was written by Justice Cardozo and in which the other two belonging to the so-called liberal element, Justices Brandeis and Stone, joined. It is said in plaintiffs' brief that the judge of the Lower Court who tried the present case, in orally outlining his conclusions, followed the dissenting opinion in the Stewart Dry Goods case rather than the prevailing one. The writer of this opinion believes with the chancellor that the dissenting opinion was the correct law in that case and that if the Kentucky case had been presented to the Supreme Court a little later than it was, after its change in personnel, or even under its personnel as of today, the decision would have been different. However that may be, we regard the decision of the majority of the Supreme Court in that case as binding in all cases to which it is applicable unless or until it is overruled. However, we think that case clearly distinguishable from the present case and that it does not control here. That was a gross sales tax which the retail merchant was required to pay at percentage rates varying with the volume of sales. As

the volume of gross sales increased, there was a corresponding increase in the rate of taxation levied on the merchants subject to the tax. Here we have a license or privilege tax levied on all types of business in certain classes based upon the volume of business done but the percentage of the rate of taxation remaining the same regardless of the volume on which the amount of taxes is determined. This distinction might not be easy to see and may seem to some to be a distinction without a difference. We are upholding the ordinance under our constitution and statutory authority and state precedents. If plaintiffs believe a federal question is involved and that the ordinance violates the equal protection clause of the 14th Amendment, as the Supreme Court said the Kentucky Gross Sales Law did, they, of course, have the Federal Courts open to determine that question. We do not believe there is such violation.

### Other Minor Grounds.

One of the minor grounds of complaint against the act is that it taxes intangibles because the evidence of deferred payments are included among the gross receipts in fixing the amount upon which to base the tax. It is clear to us that this is not taxing intangibles, as was pointed out in an earlier part of this opinion in discussing the title.

Another complaint is that the ordinance is discriminatory and lacks equality and uniformity. The ordinance may not be perfect and if we were writing it, it may be that some changes would be made more to our liking. The legislative body of the city has the right to determine the details. On the broader overall picture we do not find any substantial discrimination or lack of equality or uniformity. However, if such are found in administration of the act, they can be remedied by proper resort to court action. We do not find sufficient indication of this in the ordinance as a whole to warrant us in invalidating it.

The same thing may be said for the next complaint that the classifications are not justified. Experience in the administration will determine whether or not this is true. Such is not disclosed on the face of the ordinance, which is all we have to go by.

It is next complained that the ordinance has cer-

tain unconstitutional requirements in that it permits unlawful searches and denies due process. Section 74 of the ordinance requires the maintenance of records and allows audits to be made by the city when necessary to determine if the provisions of the ordinance have been complied with. If the city enforces the ordinance in a manner that is fair to all competitors, reasonable inspection of the licensees' records may at times be necessary. In practice it will probably be sparingly used. In the administration of ordinances of this character, it is customary for the licensee to fill out a verified form provided for that purpose by the city, just as he fills out his tax return. From this formal return, his taxing bracket can usually be fixed. Unlawful searches or seizures can, of course, be corrected by lawful means. We see no justification for section 75 of the ordinance which forbids any portion of any license tax to be refunded to any persons. It is customary in ordinances of this character to provide for refunds for a portion of the year if a taxpayer quits business and for other reasons, such as over-payment through error. This section appears to be arbitrary and may not stand a court test in a suit directed at that section.

### Conclusion.

In upholding this ordinance as a whole, we do not mean to say that every section is valid. In the practical administration of the ordinance, individual injustices will, no doubt, develop and sections may be held invalid in attacks pin-pointed at certain of its phrases under proper court test and under proper pleading and proof. The ordinance has a severability clause and the invalidation of some sections need not invalidate the whole unless they are such vital sections that without them the ordinance can no longer accomplish its purpose. For the reasons herein set out, we think on the whole the ordinance is valid and that it does not contravene the constitutions, state or national, nor the statutes under which the City of Paducah operates. For these reasons we must deny plaintiffs' motion for a temporary injunction to prohibit the ordinance from being put into effect.

Motion denied.