Argued January 17, affirmed February 28, 1950

# BARNARD MOTORS ET AL. v. CITY OF PORTLAND ET AL.

215 P. (2d) 667

*Will H. Masters* argued the cause for appellants. On the brief were Masters & Masters, of Portland.

*Alexander G. Brown,* City Attorney, and *Virgil H. Langtry,* Deputy City Attorney, argued the cause for respondents. With them on the brief was Marian C. Rushing, Deputy City Attorney, all of Portland.

A brief was filed by the following city attorneys as amici curiae; Chris J. Kowitz, Salem; James L. Hope, Astoria; Charles K. McColloch, Baker; Charles G. Schneider, Gresham; Paul L. Patterson, Hillsboro; John N. Mohr, Hood River; Carl G. Helm, Jr., La Grande; Raymond G. Wood, Oceanlake; Edgar L. Martin, Sandy; Marvin O. Sanders, Springfield; David O. Bennett, St. Helens; and Neal W. Bush, Vernonia.

Before LUSK, Chief Justice, and BRAND, BELT, ROSSMAN, BAILEY and HAY, Justices.

BAILEY, J.

Barnard Motors, a corporation, and three other corporations and the individuals constituting two part-

nerships brought this suit, under the uniform declaratory judgments act (§§ 6-601 to 6-616, O. C. L. A.), against the City of Portland and the Mayor, Commissioners, Chief Inspector of Licenses, City Attorney, and Chief of the Bureau of Police of the City of Portland, for the purpose of securing a judicial declaration that two of the twenty-two ordinances passed by the City of Portland on April 21, 1949, as amendments to ordinance No. 76398, known as the License and Business Code of the City of Portland, are unconstitutional and void. From a decree in favor of defendants, plaintiffs have appealed.

The assailed ordinances are numbered 89191 and 89193. Ordinance No. 89191 amends article 78 of the License and Business Code. It defines "Retail Merchant" to "mean any person engaged in the business of selling at retail any goods, wares, merchandise, or articles, whether natural, processed, compounded, fabricated, or manufactured", and imposes on every person engaged in the occupation of retail merchant in the City of Portland an annual license fee of $25.00, plus "$1.00 on each $1000.00 of gross sales of such business in excess of $25,000.00 during the calendar year preceding the year for which the license is issued". Exempted from the operation of ordinance No. 89191 are: (a) "persons engaged solely in a business specifically covered elsewhere in this code"; (b) "religious or charitable institutions when profits from such business do not inure to the benefit of any individuals"; and (c) retail merchants "operating chain stores".

Ordinance No. 89193, which amends article 105 of said code, defines "Wholesale Merchant" to "mean any person engaged in the business of selling at wholesale any goods, wares, merchandise or articles, whether

natural, processed, compounded, fabricated or manufactured'', and imposes on every person engaged in the occupation of wholesale merchant in the City of Portland an annual license fee of $25.00 plus ''75c on each $1000.00 of gross sales of such business in excess of $30,000.00 during the calendar year preceding the year for which the license is issued.'' Exempted from the operation of this ordinance are ''persons engaged solely in a business specifically covered elsewhere in this code'', and ''religious or charitable institutions when profits from such business do not inure to the benefit of any individual.''

At the time of the enactment of these two ordinances, article 62 of the License and Business Code contained a schedule of license fees applicable only to motor vehicle dealers, which included automobile dealers. Motor vehicle dealers were divided into five classes and a flat annual license fee, of from $7.50 to $30.00, was imposed upon each class. When the twenty-two ordinances, previously mentioned, were enacted, article 62 of the code was repealed, and now motor vehicle dealers fall within the classification of retail merchants or wholesale merchants, or both.

The plaintiffs are members of the Automobile Dealers Association of Portland, a non-profit organization of approximately 35 members, including individuals, firms and corporations, all of whom are engaged in the same business as the plaintiffs. This suit was brought by plaintiffs in their capacity of residents, inhabitants, citizens, and taxpayers of the City of Portland, and on behalf of the members of the Automobile Dealers Association, and ''all other persons resident and doing business in the City of Portland comparably and similarly situated to themselves.''

Plaintiffs called as a witness W. W. Braley, one of the plaintiffs and a member of the partnership of Braley & Graham. He testified that in normal times his firm handled ''about two and a quarter used cars per new car sold'', and that at the present time the ratio is ''better than'' one used car for each new one. He further testified that the volume of his company's business ''is large and, with being large, we attempt to keep it high because that is what we have to work on; and we oftentimes attempt to entice the used car owner into buying a new car by overallowing, or extra money, for his used car, from its actual value''; that they lost money on used cars; and that an ''automobile dealer is happy if he can make one per cent on his gross'' volume. He stated that in addition to the sale of automobiles they sold parts and service; and that by service he meant ''repair of automobiles and things like that''; that Braley & Graham sold automobiles at wholesale and retail; that the price at which they sold automobiles included ''the price of the automobile at the factory, and government tax, freight to get it here, and any accessories that might be on the automobile at the time of delivery''; and that they made no profit on freight and excise tax but that freight and excise tax constituted a part of the gross sales.

There was introduced by plaintiffs, as an exhibit, a tabulation of the amounts of excise tax and freight paid on gross sales for one-half year (presumably the first half of the year 1949) by five of the six plaintiff automobile dealers. The amounts of freight paid by four of these dealers were less than seven per cent of their gross sales; in one instance it was only two and six-tenths per cent. As to the fifth dealer it was slightly in excess of thirteen per cent. The excise tax

paid ranged from one per cent to six per cent of their gross sales for the half year period.

Plaintiffs assign as error the failure of the circuit court to hold that, as to motor vehicle dealers, ordinances No. 89191 and No. 89193 violated the 14th Amendment of the Constitution of the United States and §§ 20 and 32 of article I of the Constitution of the State of Oregon and were therefore unconstitutional and void. They argue that the "placing of Motor Vehicle Dealers into the classification of Retail Merchant is an unreasonable, arbitrary and discriminatory classification prohibited by the 14th Amendment of the Constitution of the United States and Section 20, Article I of the Constitution of the State of Oregon." In support of this contention they cite: *Stewart Dry Goods Co. v. Lewis,* 294 U. S. 550, 79 L. Ed. 1054, 55 S. Ct. 525; *Great Atlantic & Pacific Tea Co. v. Harvey,* 107 Vt. 215, 177 A. 423; *Ed. Schuster & Co. v. Henry,* 218 Wis. 506, 261 N. W. 20; *Great Atlantic & Pacific Tea Co. v. Valentine,* 12 F. Supp. 760; *State v. Wright,* 53 Or. 344, 100 P. 296, 21 L. R. A., N. S., 349; *State v. Savage,* 96 Or. 53, 184 P. 567, 189 P. 427; *Bell Potato Chip Co. v. Rogers,* 156 Or. 75, 66 P. (2d) 287; *Waters-Pierce Oil Co. v. City of Hot Springs,* 85 Ark. 509, 109 S. W. 293; *City of Danville v. Quaker Maid, Inc.,* 211 Ky. 677, 278 S. W. 98; *Portland v. Portland Ry., L. & P. Co.,* 80 Or. 271, 156 P. 1058; *Sterett & Oberle Packing Co. v. Portland,* 79 Or. 260, 154 P. 410, 415; *Kellaher v. Portland,* 57 Or. 575, 110 P. 492, 112 P. 1076.

We shall now review those cases. In *Stewart Dry Goods Co. v. Lewis,* the court thus described the tax there involved: "The tax imposed upon the first $400,000 of annual gross sales is 1/20th of one per cent. The rate increases on each additional $100,000 of sales

between $400,000 and $1,000,000, inclusive, being 17/20ths of one per cent. in the last bracket. On sales over $1,000,000 the rate is one per cent.'' In holding the act unconstitutional, the court observed:

'' * * * The taxable class is retail merchants, whether individuals, partnerships or corporations; those who sell in one store or many; those who offer but one sort of goods and those who through departments deal in many lines of merchandise. The law arbitrarily classifies these vendors for the imposition of a varying rate of taxation, solely by reference to the volume of their transactions, disregarding the absence of any reasonable relation between the chosen criterion of classification and the privilege the enjoyment of which is said to be the subject taxed. It exacts from two persons different amounts for the privilege of doing exactly similar acts because the one has performed the act oftener than the other.''

In discussing the question before it the court made the following pertinent statements relative to excessive taxes:

''To condemn a levy on the sole ground that it is excessive would be to usurp a power vested not in the courts but in the legislature, and to exercise the usurped power arbitrarily by substituting our conceptions of public policy for those of the legislative body. * * * Once the lawfulness of the method of levying the tax is affirmed, the judicial function ceases. He deludes himself by a false hope who supposes that, if this court shall at some future time conclude the burden of the exaction has become inordinately oppressive, it can interdict the tax.

''The suggestion is made that the *ad valorem* property tax heretofore laid on Kentucky merchants bears more heavily upon the little dealer than upon his bigger competitor, as the real estate and stock of merchandise of the former is greater

in proportion to the business done than is the case with the latter. This fact may indeed be a proper reason for adjusting the tax burden so as better to reflect the fruits of the enterprise; but it can afford no excuse for an arbitrary and unequal imposition as between persons similarly circumstanced. The record fails to show that an income tax or a flat tax on sales would not accomplish the desired end. *The adoption of laws of the latter description by many of the states is a practical confirmation of the view that they are effective measures."* (Emphasis added.)

*Great Atlantic & Pacific Tea Co. v. Harvey; Ed. Schuster & Co. v. Henry;* and *Great Atlantic & Pacific Tea Co. v. Valentine* follow the holding in *Stewart Dry Goods Co. v. Lewis* and are based on similar facts. We here call attention to *Paducah Automotive Trades Ass'n v. City of Paducah,* 307 Ky. 524, 211 S. W. (2d) 660, which explains the tax involved in the *Stewart Dry Goods Company* case and distinguishes that tax from the one in the instant case.

*City of Danville v. Quaker Maid, Inc.,* involved an ordinance of the City of Danville which imposed a license tax on the business of retailing groceries, meats, fish and oysters. That ordinance classified those engaged in the grocery business thus:

" * * * First, regular service grocery stores not employing more than two employees. On this class the license imposed is $12.00 per year, and $5.00 for each additional employee. Second, cash and carry grocery stores not self-service and not employing more than two persons. On this class, the license is $25.00 per year, and $25.00 for each additional employee. Third, self-service, cash and carry grocery stores not employing more than two persons. The license on this class is $40.00 per year, and $30.00 for each additional employee."

The Quaker Maid, Inc., was a grocery store which made no deliveries and sold only for cash. It came, therefore, within the second class. In holding that the act was discriminatory and not uniform, the court said: "The business of the appellee [Quaker Maid, Inc.] is to sell groceries of the same kind, character, quality, quantity and for approximately the same price as those of the ordinary grocery store. The only difference between the business of appellee and that of the ordinary grocery is that appellee extends credit to no one and makes no deliveries. But this difference in this detail of conducting the business affords no reasonable ground for classifying appellee on a basis for taxation purposes different from that of the ordinary grocery store."

In *Waters-Pierce Oil Co. v. City of Hot Springs* an ordinance imposing a tax of $50.00 on vehicles used for transporting oil and a tax of $10.00 or less on vehicles of the same kind, size and capacity, used for other purposes, was held void because arbitrarily discriminating against the owners of vehicles used for transporting oil. The court, in *Portland v. Portland Ry., L. & P. Co.,* held that the ordinance imposing a tax on the Portland Ry., L. & P. Co. was not enacted as an exercise of the authority granted by subdivision 21 of § 73 of the Portland City Charter, which empowered the city to grant licenses with the object of raising revenue, or regulation, or both, and was therefore void. The court also held that the "ordinance is void if considered as a property tax". In this latter holding the court "applied the sections of our state constitution applicable to taxation as they existed prior to the amendment of 1917". *Redfield et al. v. Fisher et al.,* 135 Or. 180, 207, 292 P. 813, 295 P. 461, 73 A. L. R.

721. In discussing the ordinance under consideration in the Portland Ry., L. & P. Co. case the court said: "Judicial precedents have firmly established the rule that a definite per centum of the gross receipts of the business may be taken as the measure of the amount to be paid for the privilege of actually transacting a business, and, moreover, this method of ascertaining the amount of a license tax, whether on a business or for the privilege of doing business in a corporate capacity, is not necessarily a tax on the earnings". Citing many authorities.

It was held in *Sterett & Oberle Packing Co. v. Portland* that an ordinance providing for the inspection and regulation of slaughter-houses located within one mile of the city and outside its limits, as a condition precedent to the sale of meat therefrom within the city, but exempting from the operation of the ordinance slaughter-houses and packing plants subject to federal inspection statutes, was discriminatory, unconstitutional and void, as far as the ordinance prescribed a higher inspection regulation than those required by the federal government, for the reason that it conferred special immunities on the packers subject to federal laws. In *Kellaher v. Portland* the ordinance under review provided for licensing certain vehicles and imposing an annual license fee for each such vehicle but omitted from its terms automobiles used in connection with the owner's business. In holding the ordinance unconstitutional the court said: "It is an arbitrary classification to say that an automobile using the streets for the same purpose as those vehicles drawn by horses which are taxed shall pay no vehicle tax. Such classification is not made on a reasonable basis and renders the ordinance void."

It was said in *State v. Savage* that a statute which made it unlawful for some persons to catch or transport for mercantile purposes salt water crabs taken in Coos Bay, "while another class of persons operating canneries should have the exclusive privilege of taking and shipping the same kind of fish beyond the limits of the county for the purposes of sale", grants "a special privilege or monopoly to those engaged in the cannery business without any good reason therefor, and is discriminatory class legislation and repugnant to Article I, Section 20 of the Constitution and void". In *State v. Wright* it was said that a "statute, which directly or by implication grants special privileges, or imposes special burdens upon persons engaged in substantially the same business, under the same con-- ditions, cannot be sound, because it is class legislation, and an infringement of the equal rights guaranteed to all". In that case there was involved a statute requir- ing a license to peddle stoves, ranges, wagons, etc. In holding that the statute was an infringement of the equal rights guaranteed to all, the court said: "There is no pretense that it applies to the occupation of peddlers or itinerant vendors as a whole or generally. It requires persons engaged in peddling a few enumer- ated articles to obtain a license and pay an exorbitant, if not prohibitive, fee therefor, while peddlers of all other articles may exercise their calling without any restriction or restraint."

And in the last of the cases cited by plaintiffs under this proposition of law, *Bell Potato Chip Co. v. Rogers,* an ordinance requiring operators of wholesale trade vehicles to undergo a health examination and to subject their vehicles to inspection by the chief of police, when engaged in the transportation of food or foodstuff, and exempting operators of vehicles transporting

articles of food grown or produced by them or some members of their families, was held discriminatory and therefore invalid.

In each of the cases which we have reviewed the discrimination which the court pointed out was apparent. In each case the court ruled that the statute or ordinance under consideration, which was held to be discriminatory, granted special privileges to, or imposed special burdens upon, some and omitted others engaged in substantially the same business.

Plaintiffs in the instant case do not contend that there is any discrimination between them and other individuals and corporations engaged in the same or similar businesses. They take the position "that their business is a specialized business; that their method of operation is different from retail merchants or wholesale merchants"; that they should have been placed in a separate classification; and "that the placing of motor vehicle dealers in a classification of retail merchants is arbitrary and unreasonable and places an unreasonable burden on the motor vehicle dealer". In support of this contention they assert that a motor vehicle dealer "is handling a product that has a high unit cost which makes for a high gross return"; that he has a large volume of business with a low net return; that he pays a high excise tax and freight charge which becomes a part of the gross sales when it is in reality an expense; that he "must take in a used car in trade as part of the purchase price" of the new car; and that he must "pay a tax on the whole sale even though he had not received any return on the used car at that time."

Practically all retail merchants pay freight charges on their goods. Many of them, such as furniture, radio,

appliance, and other, companies, are required to "take in" used, in part payment for new, merchandise. Each class of business has its own distinct problems. Probably most of them could make out a case for separate classification as plausible as that presented by plaintiffs.

It is also claimed by plaintiffs that, because they were classified separately prior to the enactment of the two ordinances in question, they should continue to enjoy that distinction. In the enactment of the twenty-two ordinances, which constituted an integrated revenue raising, or taxing, program by the city, material changes were made in the License and Business Code of the city. Many businesses, professions and callings were reclassified in order to effectuate the city's taxing program.

Plaintiffs assert that a motor vehicle dealer is not a retail merchant within the generally accepted sense of that term; that when one refers to a "retail merchant" one thinks of a storekeeper or a shopkeeper and certainly does not think of a motor vehicle dealer, and that "retail dealer" is synonymous with storekeeper and shopkeeper "which has to do with the selling of commodities in small quantities and parcels." The ordinance itself defines a "retail merchant" and within that definition is included a motor vehicle dealer, who sells at retail, to the same extent as a storekeeper or shopkeeper. Moreover, we do not agree with plaintiffs' assertion that a motor vehicle dealer is not a retail merchant "within the generally accepted sense of that term."

It is also contended by plaintiffs that the separate classification of some retail merchants violates the requirement of uniformity within each class. They

state that many of the businesses which are separately classified "would fall into the classification of retail merchant much more surely than the motor vehicle dealer, and yet they are exempt from the classification of retail merchant, and pay a small flat license fee not based upon their gross sales. These businesses consist of florists; persons selling bedding plants; fuel dealers * * * ; junk dealers; junk yards *. * * ; stalls in markets * * * ; secondhand dealers * * * ; and milk dealers * * *." In support of this contention plaintiffs cite the following cases: *Ex parte Woods,* 52 Tex. Cr. Rep. 575, 108 S. W. 1171; *Pullman P. C. Co. v. State,* 64 Tex. 274; *Re Sohncke,* 148 Cal. 262, 82 P. 956; *Commonwealth v. Hana,* 195 Mass. 262, 81 N. E. 149; *State v. Wagener,* 69 Minn. 206, 72 N. W. 67. We have thoroughly examined these cases and do not think that they have any more direct bearing on the question under discussion than those previously analyzed.

■ It was held in *Magnano Co. v. Hamilton,* 292 U. S. 40, 78 L. Ed. 1109, 54 S. Ct. 599, that the due process of law clause of the 14th Amendment of the United States Constitution is applicable to a taxing statute "only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property. [Citing authorities.] * * * Nor may a tax within the lawful power of a state be judicially stricken down under the due process clause simply because its enforcement may or will result in restricting or even destroying particular occupations or businesses [citing authorities], unless, indeed, as already indicated, its necessary interpretation and effect be such as plainly to demonstrate

that the form of taxation was adopted as a mere disguise, under which there was exercised, in reality, another and different power denied by the Federal Constitution to the state.'' The due process of law clause of the 14th Amendment is not applicable to the instant case.

■ Based upon the authority of *Garbade and Boynton v. Portland,* decided February 15, 1950, 214 P. (2d) 1000, and authorities therein cited, we are of the opinion that the two ordinances here assailed are not discriminatory and are not violative of the 14th Amendment of the Constitution of the United States or of §§ 20 and 32 of article I of the Oregon Constitution. In view of the fact that the question of discrimination was discussed at length in the Garbade and Boynton case concerning these same ordinances, we deem it unnecessary to further discuss that matter here.

■ Under assignment of error No. 2 plaintiffs state that the circuit court ''erred in not holding that ordinances No. 89191 and No. 89193 taken in conjunction with the other ordinances were too vague and ambiguous to be enforced.'' They argue that these ''ordinances are vague and ambiguous as to what ordinance the motor vehicle dealer will be under. He could be classed as a retail merchant selling at retail goods, wares and merchandise and other articles. He could be under ordinance No. 89176 'Service Businesses' which ordinance does not define Service Businesses but lists various businesses among which is repairing, servicing or rebuilding of any article, facility, machine or equipment, or he could come under article 67 of ordinance No. 76398'', which refers to a secondhand dealer.

Subsection (b) of § 20-6702, article 67, of the License and Business Code, provides:

"A secondhand dealer is any person who buys, sells, or otherwise deals in secondhand wearing apparel, tools, goods, wares, or merchandise or other articles and things usually found in a secondhand store, or any person who goes from house to house, or place to place, within the City, purchasing or soliciting the purchase of gold, silver, or other precious metals or jewelry."

It is quite apparent that plaintiffs are not secondhand dealers, as automobiles are not "merchandise or other articles and things usually found in a secondhand store."

During the trial defendants introduced ordinance No. 89818, passed by the City Council on July 14, 1949, which is entitled: "An Ordinance providing for an optional method of paying the license fee imposed by Articles 61, 78, 110 and 111 of the License and Business Code, * * *." Said ordinance provides that:

"in all cases where a person * * * is engaged in a retail business, and is also engaged in a professional business or service business or a miscellaneous business, or all or any combination of them, such person * * * shall have the option of doing either of the following:

"1. Obtaining a separate license for each of the foregoing business classifications in which he is engaged,

or

"2. Obtaining a retail merchants license only, based upon his gross receipts from all of such businesses in which he is engaged."

Ordinance No. 89193, which imposes a tax on retail merchandise, is an amendment of article 78 of the

License and Business Code. In view of the two last mentioned ordinances, we are of the opinion that plaintiffs' second assignment of error is without merit.

■ The third assignment of error asserts that the attacked ordinances are unconstitutional as violating § 11, article XI of the Constitution of Oregon. In this connection it is argued that the six per cent limitation provision in said section applies to occupational taxes. We held contrary to plaintiffs' contention in the Garbade and Boynton case and see no reason for reviewing that question here.

The decree appealed from is affirmed. Costs will not be allowed to either party in this court.